UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14 CR 88 SNLJ (ACL) |
| | ) | |
| JAMES S. BRADEN, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned is the Defendant's Motion to Suppress (Doc. 31) evidence seized from his residence. On June 17, 2014, the Defendant's twelve-year-old son made a report to the local police department that the Defendant had been selling drugs for a long time and that the Defendant recently possessed a quantity of marijuana in the family home. Based on the twelve-year-old's voluntary report, a search warrant was secured which resulted in the seizure of marijuana and other evidence.

The Motion alleges that the interview of the Defendant's minor child was illegal, because it was "done without the presence of a parent, juvenile officer, or other 'friendly adult,'" *id*. at 1, and without notifying the child of "his right to remain silent or have a parent, juvenile officer, or other 'friendly adult' present for the duration of the

questioning," *id*. at 2.[1] Prior to the suppression hearing, the Defendant announced that he also intended to challenge the sufficiency of the probable cause for the search warrant.

In the Defendant's post-hearing memo (Doc. 37), he suggests that once officers heard the boy report his father was a drug dealer they had a duty to immediately report the allegation to the Children's Division. *Id*. at 4-5. The Defendant then argues that the judge who issued the search warrant was not advised of the "totality of the circumstances," because the investigating officers did not get a juvenile officer involved in the investigation to learn that the Defendant's son "was angry with his parents for not being allowed to go to a friend's house," although no such evidence was presented at the hearing. The Defendant also argues that since the boy reported his father was a drug dealer, the officers should have concluded that the child was a victim of abuse and neglect and they should not have allowed the child to return to the family home if they believed the boy's report concerning the Defendant's alleged criminal activity.

The Government filed responses in opposition to the Defendant's claims. (Doc. 33, 38.)

In consideration of the pleadings identified above, as well as all exhibits admitted into evidence, the undersigned recommends that the following findings of fact and conclusions of law be adopted and that the Defendant's Motion to Suppress be denied.

---

[1] The Defendant also alleged that the identity of the "juvenile confidential source" was not disclosed to the judge who issued the warrant, however, the evidence adduced at the suppression hearing revealed that the judge was advised of the juvenile's identity.

## I. Findings of Fact

On June 17, 2014 at approximately 2:26 p.m., a twelve-year-old boy went to the Hayti Police Department to report a crime. The first time he went to the police department an officer was not available to talk to him. When the boy returned later in the day, Officer Shane Wiseman was present and interviewed the boy. The officer felt there was something on the boy's mind and explained that the boy appeared "more sad than anything." (FTR Gold Recording (hereinafter "FTRG") at 2:36:53.) The boy told Officer Wiseman that he wanted his dad, Defendant James S. Braden (referred to by the parties as Steve Braden), to be arrested for selling drugs. The boy reported that his father had been a drug dealer for an extended period of time. Specifically, the officer recalled the boy said:

> My dad has been a drug dealer for over five years, I've heard him brag that he's sold drugs for nineteen years and gotten away with it. [Officer Wiseman added that the boy] said he was tired of it. [The Officer explained that the boy] also stated to me that he was tired of his dad not working and his mom working, and hi[s dad] just selling drugs.

(FTRG at 2:37:44-2:37:04.)

The twelve-year-old also indicated that his father recently had quantities of marijuana in the family home, as well as guns. With the assistance of Officer Wiseman, a map was drawn of the boy's home. The boy identified and marked various locations where his father was storing marijuana and guns. Officer Wiseman estimated that his interview of the boy lasted between ten and fifteen minutes.

After taking the report from the boy, Officer Wiseman contacted an Assistant Prosecutor who instructed the officer to contact a Drug Task Force Officer (TFO) for assistance; the Assistant Prosecutor also recommended that a search warrant should be sought. The Officer contacted TFO Eddie Holloway who arrived within fifteen to twenty minutes. The boy voluntarily remained at the police department to speak with TFO Holloway. As the boy repeated the information about his father, TFO Holloway drafted an affidavit for a search warrant. The boy did not need to explain the location of his home, because it was a very small town and TFO Holloway knew where the family lived.

During the interview by TFO Holloway, the boy again explained that two days earlier his father, Defendant Steve Braden, had a large quantity of marijuana in a gray tote in the family home and that his dad bragged about being a drug dealer for a long time without being caught. TFO Holloway stated that the boy was very calm, he was not crying or upset. He further described the boy as being adamant when describing his father's activities, specifically recalling that "he said he was tired of his dad selling drugs." (FTRG at 3:17:40.) The TFO indicated that the boy was "very smart" (FTRG at 3:24:35) and that "when he was talking about the drugs, he spoke like an adult—he knew what he was talking about" (FTRG at 3:24:43).

In the Defendant's post-hearing memorandum, he gratuitously suggests his son was retaliating, because the boy had not been allowed to go to a friend's house. (Doc. 37 at 6.) No such evidence was presented at the hearing.

The interview by TFO Holloway lasted between twenty to thirty minutes, forty minutes at the most. When the interview was over, it took roughly another twenty

minutes to complete the search warrant package. The boy left the police department. Two friends had been waiting for him at the police department and apparently accompanied the boy home. Officer Wiseman estimated that the boy's home was approximately six blocks from the police department.

When TFO Holloway completed preparation of the search warrant packet, he presented it to the Assistant Prosecutor. The packet was approved by the Assistant Prosecutor and TFO Holloway presented it to a Pemiscot County Circuit Court Judge. The judge inquired about the identity of the "juvenile confidential source" and the TFO advised the judge that the child was Steve Braden's son. The TFO testified that he believed it was important to keep the juvenile's identity a secret in the Affidavit since the document would be discoverable; he was concerned that the boy's parents might retaliate against him for notifying the police about the drugs in the family home.

In addition to a detailed description of the residence, the type of evidence that was believed to be concealed in the house, plus a photograph of the residence, the TFO provided the following information in his Affidavit:

1. On Tuesday, June 17, 2014, I received information from a juvenile confidential source that Steven Braden has been selling marijuana for the past five years.

2. The confidential source stated that he has had several conversations with Steve Braden in which he told him/her he has been selling marijuana for the past twenty (2[0]) years and has never got caught.

3. The Confidential Source went on to say that on or about Sunday, June 15, 2014, he seen a large amount of marijuana in a gray snap storage tote in a spare bedroom of Steve Braden's home. The confidential Source stated there is also marijuana in the top right dresser drawer of Braden's dresser.

4. The Confidential Source stated approximately a week ago he walked into the house and seen Steve Braden holding a large zip lock bag of marijuana in the kitchen area.

5. The name of the confidential source is being withheld due to the personal relationship of the above mentioned suspect and that the confidential source is a juvenile. I also believe that the information provided by the confidential source is reliable due to the personal relationship of the source and the above mentioned suspect.

(Gov't. Ex. #1A.) After reviewing the search warrant packet, the judge signed it at 4:10 p.m. The judge also asked if DFS had been contacted. TFO Holloway advised the judge that he planned to call DFS on the way to execute the search warrant.

Both officers testified that they viewed the boy as a witness to a crime, not as a victim or a suspect. Officer Wiseman testified that if he had viewed the boy as a victim then he would have made a hotline call; he also stated that both minors and adults are allowed to report crimes under police department policy. TFO Holloway asked the boy if the Defendant had ever hit him and the boy denied any physical abuse. TFO Holloway testified that when a child makes a report that his parent is involved in a crime, officers are required to contact the Division of Family Services (DFS), however, he was not aware of a policy that requires a member of DFS to be present for an interview of the child. TFO Holloway testified that while en route to execute the search warrant he called DFS directly and then made a hotline call.

Around 5:30 p.m., after conducting a debriefing to plan the search warrant execution, the officers arrived at the Defendant's residence. The Defendant's son was in the yard with a friend. The officers asked the boy to tell the Defendant they were there.

The Defendant came outside and spoke to the officers. The officers advised the Defendant that they had a search warrant for drugs. The officers conducted a protective sweep of the residence and determined that the Defendant had been the only person inside the residence. A search of the residence resulted in the discovery of many items described by the Defendant's son, including: marijuana in various locations, multiple digital scales, more than $12,000, a notebook that was believed to contain records of drug sales, guns, and ammunition.

## II. Conclusions of Law

The Defendant first attacks the lawfulness of the interview of his son, although he does not dispute that the interview occurred when the boy voluntarily reported a crime to the police and the child was not viewed as a suspect of any crime. The Defendant offers no authority to support his position that the interview of the child or the manner in which the information was used was unlawful. Instead, he alleges that the twelve-year-old's report that his father was a drug dealer should have resulted in the officers immediately reporting the allegation to DFS and enlisting DFS' assistance in interviewing the child. The Defendant's argument fails.

### II.A. Interview of minor child who voluntarily came to police station to report a crime was lawful.

The Supreme Court received an *amici curiae* brief submitted on behalf of twenty-seven states in a case that addressed, in part, the issue of taking statements from children without parental consent in abuse situations, which is instructive in the instant case.

The purpose of an . . . interview outside the presence of parents, guardians,

> or other persons responsible for the care of the child is so that welfare officials and police officers may obtain an untainted interview. The reasons for interviewing without parental consent when a parent is the alleged abuser are obvious. *R.S. v. State*, 459 N.W.2d 680, 687 (Minn. 1990). In the interest of protecting children and of obtaining untainted evidence of abuse, many States have codified the circumstances under which children suspected of being abuse victims may be interviewed without parental permission.

Brief for Petitioner, *Camreta v. Greene*, 131 S.Ct. 2020 (2010) (No. 09-1454), 2010 WL 2691594 at *9-10 (U.S.) (amicus brief).

The applicable rule in the state of Missouri provides that parental permission to interview a child is not required if the parent is the “alleged perpetrator.” Mo.Ann.Stat. § 210.145(5). Based on the fact the twelve-year-old voluntarily reported that his father was a drug dealer, there was no requirement for the officers to contact his parents or DFS.

Additional relevant instruction comes from a nuanced civil rights case where a juvenile committed suicide after having worked as an informant without his mother’s consent. The Magistrate Judge in that case commented:

> While minors are entitled to the same panoply of due process rights as adults, and parents are to some extent entitled to be notified of their child’s due process rights, *In re Gault*, 387 U.S. 1, 87. . .(1967), the Court has found no case law to support the proposition that the police must check with a minor’s parents before utilizing that minor in the prevention of crime. That it is wise to obtain parental consent prior to involving a minor in such activities is beyond question. Where, as here, the minor comes forward of his own accord with information of incipient criminal activity, raising the advisability of parental consent to a constitutional mandate would unduly restrict the officer’s ability to act on that information in the manner he deems necessary.

*Williamson v. The City of Virginia Beach*, 786 F.Supp. 1238, fn. 22 (1992).

The undersigned concludes that there is no authority to support that the failure of the officers to seek parental consent or request the presence of a friendly adult during the interview of the Defendant's son in this case should result in the suppression of any of the evidence seized.

**II.B. The search warrant was supported by probable cause.**

The Defendant's second argument is that the officers' failure to include a DFS officer in the interview of the Defendant's son resulted in the officers not receiving important background information that impacted the issuing judge's ability to assess the "totality of the circumstances" surrounding the belief that there was probable cause that drugs would be found in the Defendant's residence. (Doc. 37 at 6.) Based on this argument, the undersigned will examine whether or not the search warrant was supported by probable cause.

Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whether probable cause has been established involves the practical common sense evaluation of the totality of the circumstances. *Gates*, 462 U.S. at 238.

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Id.* at 632. All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched. *Gates, supra*. Also, affidavits should not be read in a hypertechnical manner. *See United States v. Ventresca*, 380 U.S. 102 (1965).

Probable cause may be found in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948). While these are some of the ways in which probable cause is commonly established, they are by no means all-inclusive. Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. *Gates*, 462 U.S. at 230. "'The preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination' as to whether an affidavit establishes probable cause." *United States v. Leon*, 468 U.S. 897, 914 (1984).

When an "affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005), citing *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996). The credibility and reliability of an informant are not "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. As the Supreme Court elucidated, "[i]nstead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id*. at 233 (citations omitted). The Court noted ". . .if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary." *Id*. at 233-34 (citations omitted). *See United States v. Harris*, 403 U.S. 573, 584-85 (1971) (The reliability that comes from knowing an informant's identity is not based on inclusion of their name in the affidavit, but rather on the fact that if he/she is lying he/she may be prosecuted under state laws for making a false statement to police.); *Tolbert v. United States*, 112 Fed.Appx. 440, 443-44 (6th Cir. 2004) (unpublished) (Search warrant was sufficient to establish probable cause when informant was a juvenile where the juvenile's identity was known to the police; the juvenile's account was first-hand, recent and specific; the juvenile's statement was against penal interest; and the juvenile's statement was corroborated through recently received anonymous reports to

police.); *United States v. Scalia*, 993 F.2d 984, 987 (1st Cir. 1993) (Information provided by a "young concerned citizen" whose reliability was untested was sufficient to support probable cause based on the specificity and detail provided by the young person as a result of their firsthand knowledge.)

Courts may consider whether information supplied by an informant is corroborated by other information known to law enforcement when examining whether the totality of the circumstances supports a finding of probable cause. *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993). In the absence of a prior record of reliability, the First Circuit has recognized that, where the informant was "*not a professional* … but a private citizen with *no known criminal record* or other criminal contacts, who came forward on his own . . . [,] the informant's story may be more easily accepted…." *United States v. Campbell*, 732 F.2d 1017, 1019 (1st Cir. 1984). As the *Gates* Court observed:

> we intended neither a rigid compartmentalization of the inquiries into an informant's "veracity," "reliability" and "basis of knowledge," nor that these inquires be elaborate exegeses of an informant's tip. Rather, we required only that some fact bearing on two particular issues be provided to the magistrate.

*Gates*, 462 U.S. at 231.

In this case, TFO Holloway's belief that the information provided by the Defendant's son provided probable cause that evidence related to marijuana trafficking would be found at the Defendant's residence was supported by: 1) the basis of the "juvenile confidential source's" knowledge—specific instances of recent criminal activity that the child observed firsthand—and 2) his reasonable conclusion that the "juvenile

confidential source's" information was reliable based on the child's personal relationship to the Defendant, which the judge learned was as the Defendant's son.

In summary, based on the twelve-year-old's relationship to the suspect of the investigation and the detailed nature of the information provided, TFO Holloway believed the boy's information was credible. It is noteworthy that the "juvenile confidential source" was not a typical informant rather he was the son of the Defendant and a person who would suffer a serious detriment from police if his information proved to be untrue. TFO Holloway had an opportunity to assess the boy's credibility and found the boy's information to be compelling enough to apply for a search warrant. The very specificity of the multiple firsthand and detailed accounts the boy recounted regarding his father's marijuana trafficking activities contributed to the officer's belief that marijuana would be found in the Defendant's residence. Not to mention the potential adverse consequences the boy would face from the police and his family if his statements were false. All of these things made it reasonable for the officer and the judge to believe that evidence related to marijuana trafficking would be found in the Defendant's home.

The Defendant did not offer any evidence to support that the reason for his son's report was in response to his parents not allowing him to go to a friend's home. Even if this gratuitous assertion had some basis in reality, the fact of the matter is that the boy told the truth about his father being a drug dealer—the Defendant was in fact found to be in possession of a quantity of drugs and guns in the family home.[2] In making the report

---

[2] As the Supreme Court noted in *Gates*, ". . .even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing,

to police, the Defendant's son exemplified bravery and maturity that would not be expected of a twelve-year-old.

Given the above, the undersigned concludes that there was sufficient probable cause to search the Defendant's residence for "marijuana, paraphernalia for packaging marijuana, and records and proceeds from the sale of marijuana." (Gov't. Ex. #1A.)

**II.C. Good Faith**

Further, while evidence obtained as a result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. *See United States v. Leon*, 468 U.S. 897, 920, 921 (1984). There are four circumstances under which the *Leon* good faith exception does not apply. They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) " the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007). *See also Leon,* 468 U.S. 897 at 832. Based on the above, even if the undersigned had concluded that TFO Holloway's Affidavit was insufficient to establish probable cause, the search would still be valid because the officer acted in objective good faith in executing the warrant.

---

along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234.

In *United States v. Grant*, 490 F.3d 627 (8th Cir. 2007), the Court stated as follows in dealing with the good faith exception:

> Under the *Leon* good faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. . . In assessing whether the officer relied in good faith on the validity of the warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit. . .and we confine our inquiry "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization" . . .

*United States v. Grant*, 490 F.3d 627, 633 (8th Cir. 2007). *See also, United States v. Guzman, supra*.

In this case, the totality of the circumstances support that it was objectively reasonable for the officers to rely on the warrant in this case and that they did so in good faith. First, the undersigned concludes that the judge was not misled by any misstatements made by the affiant, nor did the judge wholly abandon his judicial role.

As to whether or not the Affidavit was so lacking in indicia of probable cause or was so facially deficient that neither the executing officers nor the judge could believe it was valid, the undersigned concludes that the Affidavit was more than sufficient to meet the standard under *Leon*. The officer articulated that the "juvenile confidential source" was viewed as reliable based on his relationship to the suspect, along with very specific details of firsthand observations of criminal activity within the Defendant's residence. *See United States v. Carter*, 413 F.3d 712, 714-15 (8th Cir. 2005).

Finally, the officer acted reasonably in attempting to obtain the warrant, and taking the necessary steps to present the warrant application to the magistrate judge. Therefore, the undersigned concludes that the Warrant and Affidavit were also sufficient under *Leon* standards.

## III. Conclusion

In accordance with the Memorandum above, **IT IS RECOMMENDED** that the Defendant's Motion to Suppress Evidence (Doc. 31) be **denied**.

The parties are advised that they have fourteen days in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. Failure to file timely objections may result in a waiver of the right to appeal questions of fact. *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of May, 2015.